# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
|     **Philadelphia Regional Office** | )    **Case Number:  1:15-cv-2401** |
|     **1617 JFK Boulevard, Suite 520** | ) |
|     **Philadelphia, PA  19103,** | ) |
|  | ) |
|           **Plaintiff,** | ) |
|  | ) |
|         **v.** | ) |
|  | ) |
| **COLONIAL TIDEWATER REALTY INCOME** | ) |
|     **PARTNERS, LLC,** | ) |
|     **14 Cinnamon Drive** | ) |
|     **P.O. Box 241** | ) |
|     **Conowingo, MD  21918** | ) |
|     **(Cecil County),** | ) |
|  | ) |
| **JAMES R. GLOVER,** | ) |
|     **2000 Wilson Road** | ) |
|     **White Hall, MD  21161** | ) |
|     **(Baltimore County),** | ) |
|  | ) |
|     **and** | ) |
|  | ) |
| **SHERMAN T. HILL,** | ) |
|     **4515 King George Court** | ) |
|     **Perry Hall, MD  21128** | ) |
|     **(Baltimore County),** | ) |
|  | ) |
|         **Defendants.** | ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows against

defendants Colonial Tidewater Realty Income Partners, LLC, James R. Glover, and Sherman T. Hill:

1

## SUMMARY

1.      This action involves a fraudulent offering scheme and investment advisory fraud principally conducted by James R. Glover ("Glover").  From approximately May 1998 to May 2012, Glover defrauded at least 125 investors out of approximately $13.5 million through the sale of unregistered securities of Colonial Tidewater Realty Income Partners, LLC ("Colonial Tidewater") – an entity he controlled along with his longtime friend, co-defendant Sherman T. Hill ("Hill").  During this period, Glover used his position as a registered representative and investment adviser representative at Signator Investors, Inc. ("Signator") to sell these fraudulent offerings to Signator's customers and clients (the "Clients").

2.      Colonial Tidewater is a holding company that primarily invests in and manages various forms of residential and commercial real estate, including mobile home parks, single-family residences, undeveloped land, and an age-restricted community.

3.      While Hill managed the day-to-day operations of the business, Glover was principally responsible for soliciting Colonial Tidewater investors.  Glover enticed investors through distribution of a private placement memorandum ("PPM") and oral representations that falsely overstated the financial condition of Colonial, the liquidity of the investments, and the expected rates of returns.  In doing so, Glover took advantage of the faith his Clients placed in him as their financial adviser and, for many, as their trusted friend they had known for years as fellow members of a local church.

4.      Glover further defrauded these investors by taking undisclosed commissions, unjustified "fees," and other monies directly from unsuspecting Clients totaling approximately $839,000.

5.      While Hill did not personally interact with most investors, he furthered the fraud by preparing false valuations of Colonial Tidewater's underlying properties and omitting material facts about other properties in the various written materials used to solicit investments.

6.      As a result of the conduct described in this Complaint, defendants Glover, Hill, and Colonial Tidewater violated and, unless restrained and enjoined, will continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b5].  Glover also violated and, unless restrained and enjoined, will continue to violate Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].  In addition, Hill violated and, unless restrained and enjoined, will continue to violate Section 20(b) of the Exchange Act [15 U.S.C. § 78t(b)].

## JURISDICTION AND VENUE

7.      The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], to enjoin such transactions, acts, practices, and courses of business and to obtain disgorgement, prejudgment interest, civil penalties, and such other and further relief as the Court may deem just and appropriate.

8.      This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

9.      Venue in this District is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15

U.S.C. § 80b-14].  Defendants are inhabitants of, or may be found within, the District of Maryland.

Certain of the transactions, acts, practices, and courses of business constituting the violations alleged

herein occurred within the District of Maryland, and were effected, directly or indirectly, by making use

of the means or instruments or instrumentalities of transportation or communication in interstate

commerce, or of the mails, or of the facilities of a national securities exchange.

### DEFENDANTS

10.     **James R. Glover**, age 73, resides in Whitehall, Maryland.  He was a registered

representative and investment adviser representative in a branch office of Signator in Towson, Maryland

from May 1, 1998 through May 11, 2012, when he was permitted to resign.  Glover has been a

managing member of Colonial Tidewater since April 1, 2004.

11.     **Sherman T. Hill**, age 59, resides in Perry Hall, Maryland.  Hill has been a managing

member of Colonial Tidewater since the company's inception.

12.     **Colonial Tidewater Realty Income Partners, LLC**, is a Maryland limited liability

company that was formed on January 26, 1998.  The company's principal place of business is located in

Conowingo, Maryland.  Colonial Tidewater owns and operates residential and commercial properties

through its subsidiaries in Maryland, Pennsylvania, New York, and Idaho.  Colonial Tidewater's current

properties include Catalyst Group, LP, also known as Cinnamon Woods, which is an over-55

community of approximately 50 manufactured homes located in Conowingo, Maryland.  Catalyst

Group, LP owns a water/sewer plant that operates under the name Water Management, LLC.  There are

several mobile home parks in Pennsylvania and New York, including, Pine Creek Associates, LLC,

which consists of five mobile home/RV parks in Avis, Pennsylvania, Ball's & Sorber Associates, LLC,

which includes two mobile home parks in Painted Post and Addison, New York, and Stony Fork

Associates, LLC, a mobile home park in Wellsboro, Pennsylvania. Other properties include Greater River Valley Townhomes, LLC, which consists of two townhomes and 16 developed lots in Montoursville, Pennsylvania, Colonial Edgewood Holdings, LLC, a nine-lot unimproved subdivision in Edgewood, Maryland, and Colonial Stone Brook Homes II, LLC, an apartment complex in Rexburg, Idaho.  Colonial Tidewater also owns Baltimore Communities, LLC, which is an entity that holds title to a franchise of EPCON Communities, LLC to develop active adult condominium communities in the Mid-Atlantic region, and has a 49 percent ownership interest in Colonial Elkhead Communications, LLC, an entity that owns AM radio station broadcasting rights.  Colonial Tidewater has never been registered with the Commission in any capacity.

## RELATED PERSONS AND ENTITIES

13.     **Signator Investors, Inc.**, headquartered in Boston, Massachusetts, is a dually registered broker-dealer and investment adviser.

14.     **Tidewater Strategic Ventures, Inc.** is an entity incorporated by Glover in Maryland in July 2010.  Tidewater Strategic Ventures has never been registered with the Commission in any capacity.

15.     **Cory D. Williams**, age 43, resides in Monkton, Maryland. He was a registered representative and investment adviser representative in a branch office of Signator in Towson, Maryland from April 30, 1998 through March 7, 2013, when his employment was terminated.

## FACTS

16.     In May 1998, Glover and his business partner, Cory D. Williams ("Williams"), joined the Towson office of Signator after working together at another brokerage firm, where Williams began his career under Glover's tutelage.

5

17.     Glover's client base consisted primarily of financially unsophisticated individuals who relied heavily on him for guidance concerning their investments and insurance needs.

18.     Glover was a well-respected member of The Church of Jesus Christ of Latter-day Saints, where he held various leadership positions.  Glover used his membership, position, and the connections he made in the church to obtain their trust and thus expand his list of Clients.  As a result, Glover had strong personal relationships with many Clients, some of whom described him as "another dad" or as "part of the family."  Glover took advantage of their trust to further his fraud.

19.     In addition, Glover was a long-time professor at a local community college and touted his position to prospective investors to further lend him credibility.

20.      While at Signator, Glover and Williams shared most of their Clients, some of whom were brokerage customers, some were advisory clients, and many had both brokerage and advisory relationships with Glover and Williams.  The two shared commissions generated from servicing the Clients and, by 2008, Glover and Williams split equally the income generated from their business.

## THE OFFERING FRAUD

21.     From approximately May 1998 through May 2012, in a process controlled almost entirely by Glover, Colonial Tidewater sought investments through the unregistered offer and sale of partnership units.

22.     Colonial Tidewater offered the units through a series of PPMs issued in January 1998, March 2001, April 2004, August 2009, and April 2011.  The units cost $50,000 each, although Glover permitted investors to purchase fractional units.

23.     As of April 2004, the PPM disclosed that Glover was the managing member of Colonial Tidewater along with Hill, who had been a managing member since the company's formation in January

1998.  Under Colonial Tidewater's operating agreement, all decisions by Glover and Hill required the concurrence of both.  While Glover and Hill were equal partners, Hill generally made decisions relating to the day-to-day management and development of the properties and Glover handled investor solicitation, redemptions, and relations.  Hill had almost no direct interaction with investors.

24.     The offerings were virtually identical, were part of a single plan of financing to raise money to invest in real estate, and involved the issuance of partnership units in exchange for cash from investors.

25.     The PPMs stated that Colonial would use the proceeds to invest in various forms of residential and commercial real estate, and to provide working capital.  Additionally, the PPMs said that Colonial would purchase properties through a series of subsidiaries, which subsidiaries would be owned 50 percent by Colonial Tidewater and 50 percent by a Maryland limited liability company owned by Glover and Hill.

26.     The PPMs listed the properties, setting forth Colonial Tidewater's ownership interest, a current valuation of each property, and summaries containing positive statements concerning the properties.  While Hill drafted the portions of the PPMs relating to the property summaries and valuations, Glover maintained the "final say" and had ultimate authority over the PPMs.

### Glover Solicited Signator Clients to Invest in Colonial Tidewater

27.     All of Colonial Tidewater's investors were solicited by Glover, and nearly all came from his client base at Signator.

28.     Glover approached many of his Signator Clients – most of whom were financially unsophisticated – and suggested that they consider investing in Colonial Tidewater.  If they agreed,

Glover generally (but not always) provided a PPM and subscription agreement that purported to elicit information to determine whether they were "accredited investors."

29.     During the relevant time, to be an accredited investor, one must have a net worth of at least one million dollars, or have income of at least $200,000 each year for the past two years (or $300,000 together with their spouse if married) and have the expectation to make the same amount this year.

30.     Glover was well aware that the majority of investors in Colonial Tidewater was not accredited because he was their investment adviser or registered representative at Signator with access to their financial information.

31.     Hill also sent Colonial Tidewater investors annual or semi-annual property reports that provided information concerning the properties owned by Colonial.  The property reports were drafted by Hill, although Glover drafted overviews of the real estate market, which were included as letters sent with the reports or as summaries at the beginning or end of the reports.

32.     Several of the annual or semi-annual property reports suggest that Glover was providing services to Colonial Tidewater on a pro bono basis through his affiliation with the local community college.

33.     These reports were also used to solicit additional investments from Colonial Tidewater investors.

**Glover and Hill Misrepresented Colonial Tidewater's**
**Financial Condition to Prospective Investors**

34.     Initially, Colonial Tidewater owned and developed some properties that were income generating.  However, Colonial Tidewater's overreliance on debt to support its expansion and acquisition of properties, with little other sources of income other than new investor monies to finance the debt and property related expenses, caused Colonial Tidewater to become reliant upon infusions of new investor capital in order to stay current with its mortgage obligations and other expenses.

35.     Following the financial crisis of 2008, many of Colonial Tidewater's subsidiaries were losing money and were highly in debt.  Glover and Hill hid the truth about Colonial Tidewater's true financial condition.  Glover also misled investors about the expected returns and risks of investing in Colonial Tidewater, and Glover's own financial interests in their investments.

36.     The April 2011 PPM and property reports provided to certain prospective investors misled investors about the financial condition of Colonial Tidewater and its real estate holdings.  Hill was responsible for drafting the portion of the PPM describing Colonial Tidewater's properties.  The values Hill assigned to certain properties listed in the April 2011 PPM were false, including that he grossly overvalued Cinnamon Woods, Colonial Tidewater's marquee property, an over-55 community in Conowingo, Maryland as well as Pine Creek Associates, which consisted of five mobile home/RV parks in Avis, Pennsylvania.

37.     In addition, the PPM's descriptions of the properties, which Hill drafted for the purpose of inclusion in the PPMs, did not disclose the properties' true financial condition, and failed to disclose that certain properties had been lost to, or were facing, foreclosure.

38.     Hill knew that Glover was providing to prospective investors the PPMs he prepared that contained inflated property values and misleading descriptions despite Colonial Tidewater's actual

9

precarious financial condition.  And Glover knew that the property values assigned by Hill were false and misleading.

39.     The annual and semi-annual property reports principally drafted by Hill and sent to Colonial investors suffered from the same defects.  By at least 2008, these reports were false and misleading for several reasons.  The reports listed certain real estate assets that were not owned by Colonial Tidewater, had been repossessed, or were in the process of foreclosure, without disclosing these facts.  The reports did not disclose, for example, that sales of Cinnamon Woods units were significantly lower than expected and thus obligations were in arrears.

**Glover Made Materially False and Misleading Statements**
**Regarding the Expected Returns and Risk of Investing**

40.     Glover also used oral misrepresentations to induce his Signator Clients to invest in Colonial Tidewater.

41.     In his oral misstatements, Glover misstated the risk, liquidity, and rate of return of the Colonial Tidewater investment.  Glover also told investors that Colonial Tidewater was a low risk investment that was suitable for all, regardless of income or financial status.  He did not warn investors that they could lose their money.

42.     Since Glover did not provide all investors with copies of the PPM, and they simply trusted his word, he often made different misrepresentations to different investors, including misstatements that contradicted the plain terms of the PPM itself.

43.     For example, Glover promised certain investors specific rates of return that were false.  Glover told one investor that he would receive a return of 7 to 9 percent annually if he kept his money invested in Colonial for five years, but would receive a 15 percent annual return if he kept his money invested for nine to ten years.

44.     Glover also made material misrepresentations about the very nature of the investment. He told certain investors that their investments in Colonial Tidewater required a lock-up period of several years, but that their investments would then be returned, plus guaranteed profits, telling at least one that she would not have access to her investment for five years, but at that time she would receive a 50 percent return.  These representations were without any basis in fact.

45.     Glover indicated to other investors that their monies would be available when needed.

46.     When one unemployed investor told Glover that she needed her monies invested in a safe investment and required access to these monies, Glover informed her that placing her monies in Colonial Tidewater was one of the best options.  Glover did not disclose that the investments were highly illiquid and it was unlikely that investors would be able to redeem their investments when needed – particularly because, as time went on, Colonial Tidewater's properties were highly mortgaged and many were not income generating, and thus the only source of significant cash came in the form of new investments.

47.      Glover also failed to tell Clients that Colonial Tidewater was not a Signator-approved investment.  Indeed, Glover concealed this fact and made Colonial look more legitimate by providing his Clients with Signator consolidated reports that included their investments in Colonial Tidewater.  As used herein, a "consolidated report" is a single document that combines information regarding most or all of a customer's or client's financial holdings, regardless of where those assets are held.

48.     Signator representatives like Glover had access to an electronic system that could generate periodic consolidated reports for its customers and clients that could be used to include investments not held at Signator.

49.     Although Colonial Tidewater was not an approved Signator investment, Glover added Colonial Tidewater and the value of the initial investment to these statements, either by going into the

electronic system and manually entering Colonial Tidewater, or by simply attaching an additional page to the report reflecting the Colonial Tidewater investment.

50.     Using this ruse, Glover's Clients were falsely led to believe that Colonial Tidewater was a Signator-sanctioned investment.

## Glover Misrepresented His Own
## Financial Interest in Colonial Tidewater

51.     While the PPM permitted Glover to receive fees as a managing member of Colonial Tidewater, Glover falsely told many investors that he was not receiving compensation for his work relating to Colonial Tidewater.  Moreover, many of the property reports affirmatively stated that Glover was providing his services to Colonial Tidewater on a pro bono basis.  Glover also falsely told investors who did not receive a PPM that he had no connection to Colonial Tidewater.

52.     These representations were materially false and misleading as, in truth, Glover was receiving significant commissions and fees from Colonial Tidewater.  At the conclusion of each quarter, Glover caused Colonial Tidewater to issue a commission check for approximately three percent of the new funds received from investors for that quarter.

53.     To conceal these commission payments, Glover directed Colonial Tidewater's bookkeeper to issue the checks in the name of Cory Williams.

54.     From 2005 through 2011, Colonial Tidewater paid commission checks to Williams totaling $188,382.  Upon receiving these checks, Williams split the money with Glover.

55.     In total, Glover received $94,191 from Colonial Tidewater (through Williams' payments) in commissions that Glover never disclosed to his Clients.

## Glover Misappropriated Monies from and
## Breached his Fiduciary Duty to Clients and Investors

56.     In addition to making false statements to his Clients, Glover also misappropriated monies from his Clients and breached his fiduciary duty to his advisory clients in several other ways.

57.     For example, Glover caused Colonial Tidewater to issue checks to different investors with the memo line describing the payment as "Return of Capital" or "ROC" and, without the investor's knowledge, deposited the checks into his personal bank account or an account in the name of Tidewater Strategic Ventures, which he controlled.  To accomplish this fraud, Glover often forged the investor's signature without the investor's authorization.

58.     In other instances, Glover told the named investor about the check but convinced the investor to sign over the check to him as payment for a purported "advisory fee."   Other times, Glover told investors that this money was needed to cover Colonial Tidewater's operating expenses and would not impact the investor's account balance.  These statements were false.

59.     Hill was unaware of Glover's theft of funds.

60.     Glover also told certain investors periodically that they needed to pay a company called Tidewater Strategic Ventures, an entity controlled by Glover.  Glover maintained that these payments were for advisory fees, but the PPM did not require payment of such fees and none of this money went to Colonial Tidewater.  At times, Glover specified that the fee was equal to 1 percent of the investment in Colonial Tidewater.  In other instances, the rate of the fraudulent fee appears to be random.

61.     Combining the commission payments that Glover received from Colonial Tidewater (via Williams) with these other "fees" Glover was paid directly by Clients or from return of capital checks, in addition to other monies Glover misappropriated from Clients, Glover misappropriated approximately $839,128.

13

62.     As an investment adviser, Glover had a fiduciary duty to disclose material conflicts of interest to advisory clients and to act in their best interests.  Glover breached this duty through his receipt of undisclosed payments from Colonial Tidewater as well as payments from investors in the form of return of capital checks and advisory fees described above.

### Glover Invested Client Funds in
### Colonial without Authorization

63.     Using his access to Client funds at Signator, on at least three occasions, Glover also invested Clients' monies in Colonial Tidewater without authorization – using forged signatures or obtaining signatures under false pretenses.

64.     For example, in fall 2010, Glover tried to convince one Client to invest in Colonial Tidewater, but the Client declined.  Approximately six months later, the Client learned that Glover had transferred $25,000 from his IRA account to Colonial Tidewater.

65.     The Client never received a PPM or signed a subscription agreement, and never authorized Glover to transfer monies from his third-party advisory account.

66.     Another Glover Client only learned of his investment in Colonial Tidewater after confronting Glover about the value of his IRA account.  Glover then revealed that $75,000 had been invested in Colonial Tidewater.

### Colonial Tidewater Violated the Federal Securities Laws

67.     The partnership units offered to investors by Colonial Tidewater are investment contracts and are therefore securities covered under the federal securities laws.

68.     Colonial Tidewater made use of the means and instruments of transportation or communication in interstate commerce or of the mails to offer and sell securities when no registration statement was filed or was in effect as to the securities.

14

69.     Colonial Tidewater carried or caused to be carried through the mails or in interstate commerce, by the means or instruments of transportation, securities for the purpose of sale or for delivery after sale when no registration statement was filed or was in effect as to the securities.

70.     The partnership units were sold to investors through a series of almost identical offerings solicited through five PPMs, which are treated as one offering due to their similar nature.

71.     Colonial Tidewater directly offered and sold securities that were not registered with the Commission and no exemption from registration was available.

72.     The securities were offered and sold to investors in multiple states and the offering exceeded $5 million.

73.     Colonial Tidewater securities were sold to more than 35 unaccredited investors.

74.     The offering was public in that it raised approximately $13.5 million from approximately 125 of Glover's friends and acquaintances.

75.     The majority of the Colonial Tidewater investors was financially unsophisticated and did not have access to the kind of information that would have been available in a registration statement.

76.     Colonial Tidewater made or obtained money or property by means of material misstatements of fact or by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

77.     Colonial Tidewater's 2011 PPM, which was drafted by Glover and Hill (with Glover maintaining ultimate authority over the document), contained material misstatements and omissions concerning the financial condition of the properties and provided false valuations.

78.     The scienter of Glover and Hill, Colonial Tidewater's managing members, can be imputed to Colonial Tidewater.

**<u>Glover Violated the Federal Securities Laws</u>**

79.     Glover made use of the means and instruments of transportation or communication in interstate commerce or of the mails to offer and sell securities when no registration statement was filed or was in effect as to the securities.

80.     Glover carried or caused to be carried through the mails or in interstate commerce, by the means or instruments of transportation, securities for the purpose of sale or for delivery after sale when no registration statement was filed or was in effect as to the securities.

81.     Glover directly offered and sold securities that were not registered with the Commission and no exemption from registration was available.

82.     Glover made or obtained money or property by means of material misstatements of fact or by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

83.     Glover made materially false and misleading statements in discussions with investors as well as in the PPMs.  Glover was the "maker" of these statements.

84.     Glover used devices, schemes, and artifices to defraud his Clients and engaged in acts, practices, and courses of business which operated and would operate as a fraud or deceit.

85.     Glover engaged in a broad scheme to defraud in which he used deceptive acts to steal from and mislead investors.

86.     Glover was an investment adviser in that, for compensation, he engaged in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.

16

87.    Glover provided investment advice to advisory clients and managed client portfolios for a fee.

88.    Glover breached his fiduciary duty to advisory clients to act in their best interests by failing to disclose all material facts, by failing to disclose material conflicts of interest, and by misleading them.

89.    At all times relevant to this Complaint, Glover acted knowingly and/or recklessly.

## **Hill Violated the Federal Securities Laws**

90.    Hill made use of the means and instruments of transportation or communication in interstate commerce or of the mails to offer and sell securities when no registration statement was filed or was in effect as to the securities.

91.    Hill carried or caused to be carried through the mails or in interstate commerce, by the means or instruments of transportation, securities for the purpose of sale or for delivery after sale when no registration statement was filed or was in effect as to the securities.

92.    Hill indirectly offered and sold securities that were not registered with the Commission and no exemption from registration was available.  Hill was a necessary participant and substantial factor in the unregistered sales of securities.

93.    Hill made or obtained money or property by means of material misstatements of fact or by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.  Hill made false and misleading statements to investors in the property reports.  Hill was the "maker" of these statements.

94.     Hill, directly or indirectly, engaged in acts through or by means of Glover that would have been unlawful for Hill himself to do as result of the material misstatements and omissions contained in the April 4, 2011 PPM.

95.     At all times relevant to this Complaint, Hill acted knowingly and/or recklessly.

*       *       *       *       *

96.     Colonial Tidewater, Glover, and Hill executed tolling agreements with the Commission staff that tolled and suspended the running of the statute of limitations of the Commission's claims for the period August 1, 2014 through July 31, 2015.

<h2 style="text-align:center">FIRST CLAIM FOR RELIEF</h2>

<h3 style="text-align:center">Violations of Section 5(a) and 5(c) of the Securities Act<br>(Against Colonial Tidewater, Glover, and Hill)</h3>

97.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 96, inclusive, as if they were fully set forth herein.

98.     Defendants Glover, Hill, and Colonial Tidewater, by engaging in the conduct described above, directly or indirectly, in connection with a security for which no registration statement was in effect, and in the absence of any applicable exemption from registration:

(a)     made use of a means or instrument of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

(b)     carried or caused to be carried through the mails or in interstate commerce, by any means or instrument of transportation, such security for the purpose of sale and/or for delivery after sale; and

18

(c)     made use of a means or instrument of transportation or communication in interstate

commerce or of the mails to offer to sell or offer to buy such security through the use or medium

of a prospectus or otherwise.

99.     By reason of the foregoing, defendants Colonial Tidewater, Glover, and Hill Tidewater

violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## SECOND CLAIM FOR RELIEF

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
**(Against Glover)**

100.     The Commission realleges and incorporates by reference each and every allegation in

paragraphs 1 through 99, inclusive, as if they were fully set forth herein.

101.     Defendant Glover, by engaging in the conduct described above, knowingly or recklessly,

in connection with the purchase or sale of securities, directly or indirectly, by use of the means or

instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities

exchange:

(a)     employed devices, schemes or artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in

order to make the statements made, in light of the circumstances under which they were made,

not misleading; and

(c)     engaged in acts, practices, or courses of business which operated or would operate as a

fraud or deceit upon any person.

102.     By engaging in the foregoing conduct, defendant Glover violated Section 10(b) of the

Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R.§ 240.10b-5] thereunder.

**THIRD CLAIM FOR RELIEF**

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder**
**(Against Colonial Tidewater and Hill)**

103.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 102, inclusive, as if they were fully set forth herein.

104.     Defendants Colonial Tidewater and Hill, by engaging in the conduct described above, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

105.     By engaging in the foregoing conduct, defendants Colonial Tidewater and Hill violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5(b) [17 C.F.R.§ 240.10b-5(b)] thereunder.

**FOURTH CLAIM FOR RELIEF**

**Violation of Section 17(a) of the Securities Act**
**(Against Glover)**

106.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 105, inclusive, as if they were fully set forth herein.

107.     Defendant Glover, by engaging in the conduct described above, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)      knowingly or recklessly employed devices, schemes or artifices to defraud;

(b)     knowingly, recklessly, or negligently obtained money or property by means of untrue statements of material facts, or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c)     knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

108.    By engaging in the forgoing conduct, defendant Glover violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## FIFTH CLAIM FOR RELIEF

### Violation of Section 17(a)(2) of the Securities Act
**(Against Colonial Tidewater and Hill)**

109.    The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 108, inclusive, as if they were fully set forth herein.

110.    Defendants Colonial Tidewater and Hill, by engaging in the conduct described above, knowingly, recklessly, or negligently, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, obtained money or property by means of untrue statements of material facts, or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

111.    By engaging in the forgoing conduct, defendants Colonial Tidewater and Hill violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## SIXTH CLAIM FOR RELIEF

### Violation of Section 20(b) of the Exchange Act
### (Against Hill)

112.   The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 111, inclusive, as if they were fully set forth herein.

113.   Defendant Hill knowingly or recklessly, directly or indirectly, engaged in acts through or by means of Glover that would have been unlawful for Hill himself to do under Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

114.   By engaging in the foregoing conduct, defendant Hill violated Section 20(b) of the Exchange Act [15 U.S.C. § 78t(b).

## SEVENTH CLAIM FOR RELIEF

### Violation of Sections 206(1) and 206(2) of the Advisers Act

### (Against Glover)

115.   The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 114, inclusive, as if they were fully set forth herein.

116.   Defendant Glover, while acting as an investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:

(a)   knowingly or recklessly employed devices, schemes, or artifices to defraud and

(b)   knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit.

117.   By engaging in the foregoing conduct, defendant Glover violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§80b-6(1) and (2)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining defendant Colonial Tidewater from violating Sections 5(a), 5(c), and 17(a)(2) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)(2) ], and Sections 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)] thereunder;

### II.

Permanently restraining and enjoining defendant Glover from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Sections 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§80b-6(1) and (2)] thereunder;

### III.

Permanently restraining and enjoining defendant Hill from violating Sections 5(a), 5(c), and 17(a)(2) of the Securities Act [15 U.S.C. §§ 77e(a), 773(c), and 77q(a)], Sections 10(b) and 20(b) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5] thereunder.

### IV.

Ordering defendants Glover and Colonial Tidewater to disgorge any and all ill-gotten gains together with prejudgment interest thereon, derived from the activities set forth in this Complaint;

**V.**

Ordering defendants Glover, Hill and Colonial Tidewater to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

**VI.**

Granting such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

Date:   August 13, 2015

    /s/   Christopher R. Kelly
Sharon B. Binger*
G. Jeffrey Boujoukos*
Scott A. Thompson*
Kelly L. Gibson*
David L. Axelrod (Bar ID: 803801)
Christopher R. Kelly (Bar ID: 803777)
Suzanne Abt*
Assunta Vivolo*

Attorneys for Plaintiff:

U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA  19103
Tel: (215) 597-3100
Fax: (215) 597-2740

KellyCR@sec.gov

* Not admitted in the D. Md. for purposes of this case.